UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| TOBY JOSEPH STROHFUS, ) | Civ. 13-4067-KES |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | ORDER GRANTING |
| HEATHER BOWERS, Charge Nurse, ) | DEFENDANTS' MOTION FOR |
| SDSP Hill Health Service; ) | SUMMARY JUDGMENT |
| DOUGLAS WEBER, Warden, (retired) ) | |
| SDSP; ) | |
| DARIN YOUNG, Warden, SDSP; ) | |
| TROY PONTO, Associate Warden, ) | |
| SDSP Hill; ) | |
| ART ALLCOCK, Associate Warden, ) | |
| ) | |
| Defendants. ) | |

Plaintiff, Toby Joseph Strohfus, is an inmate at the South Dakota State Penitentiary (SDSP) in Sioux Falls, South Dakota. On June 14, 2013, Strohfus filed a pro se civil rights lawsuit pursuant to 42 U.S.C. § 1983, alleging that defendants violated his rights under the Eighth Amendment by failing to follow the recommendations of his ear, nose, and throat (ENT) doctor, refusing to let him see an orthopedic doctor about his back problems, refusing to provide proper treatment for his back problems, and failing to review his complaints. Docket 1. Strohfus amended his complaint to include denial or interference of care for problems with his eye. Docket 13. On August 27, 2013, and on September 12, 2013, defendants answered Strohfus's amended complaint. Dockets 25, 28. On January 8, 2014, defendants moved for summary judgment. Docket 29. Strohfus did not respond to defendants' motion and the

time for response has passed. After consideration, the court grants defendants' motion for summary judgment.

## FACTUAL BACKGROUND

Viewed in a light most favorable to Strohfus, the nonmoving party, the facts are as follows[1]:

Defendant Weber is the former warden of SDSP. Defendant Darin Young is the current warden of SDSP since May 24, 2013. Defendant Troy Ponto is the associate warden of SDSP since April 2009. Defendant Art Allcock is also an associate warden of SDSP. Defendant Heather Bowers is the charge nurse at SDSP.

Strohfus is an inmate in the custody of the South Dakota Department of Corrections (SDDOC). While in the custody of the SDDOC, Strohfus was seen by various medical professionals with regard to his severe ear condition. Strohfus was first seen by medical staff on or about June 26, 2003, for complaints about his left ear pain. Docket 32-1. Examination reveals there was "erosion of the distal portion of the canal inferiorly with some evidence of recent bleeding." *Id.* When asked if he did anything to irritate his ear, Strohfus admitted to having tried to clean out his left ear. Strohfus was given ear drops and prescribed medication for the infection. He was also scheduled for a follow

---

[1] Pursuant to Local Rule 56.1.D, "[a]ll material facts set forth in the movant's statement of material facts will be deemed to be admitted unless controverted by the opposing party's statement of material facts." Because Strohfus did not respond to movants' statement of material facts, the court deems them all admitted.

up exam. During the follow up, Strohfus reported his ear felt better. Docket 32-2. The medical staff advised Strohfus to avoid putting instruments in his ear.

More than three years later, Strohfus reported that he thought he had an ear infection. Strohfus was diagnosed with an ear infection and instructed to return for reexamination. Upon reexamination the medical staff determined the infection had healed, but Strohfus was instructed to continue the antibiotics and return in two weeks. On August 14, 2006, the medical staff concluded that the problem was reoccurring and scheduled Strohfus to see an ear, nose, and throat specialist.

On October 10, 2006, Dr. Rick Jensen, ENT, diagnosed Strohfus with possibly having an infected cholesteatoma[2] and prescribed Ciprodex otic drops. The ENT also scheduled a follow-up exam. During the follow-up exam, on November 6, 2006, Strohfus asserted that his ear problems began after a "hot piece of metal" went into his ear "while welding." Docket 32-7. Strohfus had told the medical staff at SDSP on November 3, 2006, that "a small piece of slag came into his left ear" on July 16, 2006,[3] when he was welding. Docket 32-8. Dr. Jensen instructed Strohfus to continue with the Ciprodex drops and to see

---

[2] Cholesteatoma is a destructive growth that can cause hearing loss, infection, dizziness, and facial muscle paralysis. WebMD, http://www.webmd.boots.com/a-to-z-guides/tc/cholesteatoma-introduction (last visited July 22, 2014).

[3] Defendants' Statement of Undisputed Material Facts notes that the welding accident occurred on July 16, 2013; however, the progress report cited therein notes that Strohfus claimed the accident occurred July 16, 2006. Docket 31, 32-8.

him again in a few weeks. On November 27, 2006, and December 22, 2006, the ENT found no evidence of cholesteatoma. The ENT switched Strohfus to a Lidex solution. During a follow up on January 30, 2007, the ENT recommended a CAT scan. A CAT scan was taken on February 23, 2007, and showed evidence of erosion consistent with cholesteatoma.

On March 2, 2007, Strohfus was discharged from prison, but returned to prison again on April 23, 2007. Strohfus admitted to medical staff that he had not seen any doctors for any medical condition while outside of incarceration.

Medical staff at the Mike Durfee State Prison (MDSP) on October 10, 2007, prescribed a Lidex solution for Strohfus's ear irritation. Strohfus was seen by Dr. Patrick Collison, ENT, on October 17, 2007, who determined that Strohfus's symptoms were consistent with cholesteatoma. Dr. Collison recommended that Strohfus have "a modified radical mastoidectomy on the left" ear. Docket 31-8. Strohfus underwent the procedure at Sacred Heart Hospital in Yankton, South Dakota, on November 20, 2007. He appeared to be well healed upon examination in January of 2008.

Strohfus was discharged from the SDSP on February 17, 2009, but returned after a new conviction on September 18, 2012. Upon his return, Strohfus again complained of ear pain with drainage. After testing, Midwest ENT concluded that Strohfus had "no cholesteatoma." Docket 31 at 10. Pursuant to the recommendation of the ENT, though, Strohfus was seen by the ENT on a monthly basis. The ENT recommended, but the institution was unable to comply with, that Strohfus use a blow dryer to dry his ear after

showering and wear a stocking cap at all times. Docket 31 at 10. Institutional policy only allowed Strohfus to wear a stocking cap outdoors and did not allow prisoners to have blow dryers. The ENT recommended that Strohfus could instead use a fan or book to dry his ear. Health Services refused Strohfus his medicated ear drops for a week and a half and told him he could only have one bottle a month. Docket 17.

On August 19, 2013, the ENT also recommended "a left revision tympanomastoidectomy with facial nerve monitor." Docket 32-53. Medical staff were not aware of the recommendation until September 26, 2013. Strohfus was authorized to undergo the procedure on October 3, 2013, and he underwent the procedure on December 3, 2013.

Regarding Strohfus's eye problem, on or about June 24, 2013, Strohfus "lost [his] balance when [his] ear drained and [he] fell over and split [his] eye open." Docket 13. Health Services told Strohfus that there was nothing it could do. *Id.* This incident was not recorded in Strohfus's file and the record shows Strohfus did not alert staff he needed medical attention. Additionally, his unit manager does not recall the event.

Turning next to Strohfus's back problems, Strohfus has had back problems since he was "hit by a driver in 1997." Docket 1. The incident may have caused a C7 fracture, but Strohfus was able to move all his extremities and only complained of pain around his right shoulder and arm. On December 21, 2001, Strohfus denied any medical or surgical history. On March 27, 2002, Strohfus requested new shoes for his back discomfort. On

December 29, 2005, Strohfus again requested new shoes. Health Services did not find that shoes were necessary, but told Strohfus to return if he was still experiencing back pain. On September 19, 2007, Strohfus again requested new shoes and was told again that Health Services did not find shoes were a medical necessity.

On September 20, 2012, after further complaints, the medical staff ordered an x-ray on Strohfus's lower back[4] and found mild L5-S1 disc degeneration. Docket 32-50. Strohfus was given Ibuprofen to alleviate any discomfort, but special shoes were not recommended. Docket 32-50; 32-36. Medical staff further stated that special shoes were not "a conventional accepted treatment option for back pain." Docket 32-35.

As is relevant to this action, Strohfus does not contest defendants' assertion that Strohfus was sent to ENT doctors, routinely checked, seen multiple times by medical staff, had multiple x-rays, was given antibiotics, was given eye-drops, was given surgery, fanned his ear with a book or paper as recommended, and did not alert medical staff he needed attention about slipping and hurting his eye. Additionally, Strohfus does not contest that Weber is not a proper party to this action.

---

[4] Previous x-rays taken were of Strohfus's upper back and head.

**STANDARD OF REVIEW**

"Summary judgment is appropriate when the evidence,[5] viewed in a light most favorable to the non-moving party, demonstrates that there is no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law." *Clark v. Kellogg Co.*, 205 F.3d 1079, 1082 (8th Cir. 2000); *see also* Fed. R. Civ. P. 56(a). A genuine issue of material fact contains enough facts to state a claim to relief that is plausible on its face, not merely conceivable. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). If a claim for relief is factually unsupported, summary judgment is appropriate to dispose of the claim. *Celotex, Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

"Once the motion for summary judgment is made and supported, it places an affirmative burden on the non-moving party to go beyond the pleadings and by affidavit or otherwise designate specific facts showing that there is a genuine issue for trial." *Commercial Union Ins. Co. v. Schmidt*, 967 F.2d 270, 271 (8th Cir. 1992) (internal quotations and citations omitted). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Although "the court is required to . . . give [the nonmoving] party the benefit of all reasonable inferences to be drawn from the underlying facts," *Vette Co. v. Aetna Cas. &*

---

[5] The evidence includes the pleadings, depositions, documents, electronically stored information, stipulations, answers to interrogatories, admissions, and affidavits. Fed. R. Civ. P. 56(c).

*Sur. Co.*, 612 F.2d 1076, 1077 (8th Cir. 1980), the nonmoving party may not "rest upon mere denials or allegations." *Forrest v. Kraft Foods, Inc.*, 285 F.3d 688, 691 (8th Cir. 2002). Instead, the nonmoving party must "set forth specific facts sufficient to raise a genuine issue for trial." *Id.*

    Prisoners who proceed pro se are entitled to the benefit of liberal construction at the pleading stage. *Quam v. Minnehaha Cnty. Jail*, 821 F.2d 522, 522 (8th Cir. 1987). Nonetheless, the summary judgment standard set forth in Rule 56 of the Federal Rules of Civil Procedure remains applicable to prisoners proceeding pro se. *Id.* The district court is not required to "plumb the record in order to find a genuine issue of material fact." *Barge v. Anheuser-Busch, Inc.*, 87 F.3d 256, 260 (8th Cir. 1996). Moreover, the court is not "required to speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *Id.* Courts must remain sensitive, however, "to the special problems faced by prisoners attempting to proceed pro se in vindicating their constitutional rights, and [the Eighth Circuit does] not approve summary dismissal of such pro se claims without regard for these special problems." *Nickens v. White*, 622 F.2d 967, 971 (8th Cir. 1980).

**DISCUSSION**

Strohfus asserts that defendants acted in deliberate indifference toward his serious medical needs related to his ear, eye, and back. Defendants assert that they are entitled to summary judgment on Strohfus's § 1983 claims because Strohfus stated claims for which relief cannot be granted.

## I. Defendants Are Entitled to Summary Judgment on Count I.

Among defendants named for having failed to uphold Strohfus's right to health services in connection with his severe ear condition is the former warden, the current warden, and two associate wardens. First, defendants argue and the court agrees, that warden Weber is not a proper party because Weber was not served with a summons. *See* Docket 12; *see also* Fed. R. Civ. P. 4(c)(1), 4(m). Defendants also argue that these nonmedical personnel cannot have denied medical treatment. Defendants further argue that even if all defendants were personally involved in Strohfus's treatment, Strohfus has not raised enough facts that show that it is even plausible that defendants denied or deliberately interfered with treatment.

To prevail on an Eighth Amendment claim for failure to uphold the right of health services, a plaintiff must show that a defendant was *personally involved in the denial* of treatment or *deliberately interfered* in treatment. *Dubois v. Dooley*, 277 F. App'x 651, 652 (8th Cir. 2008). "[A]n inmate must show both an objective element, that the deprivation was sufficiently serious, and a subjective element, that the defendant acted with a sufficiently culpable state

of mind." *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997) (citations omitted). The defendants must have been "deliberately indifferent to the inmate's *serious* medical needs." *Id.* (citing *Camberos v. Branstad*, 73 F.3d 174, 175 (8th Cir. 1995)) (emphasis added). "A *serious* medical need is 'one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention.' " *Coleman*, 114 F.3d at 784 (quoting *Camberos*, 73 F.3d at 176)) (emphasis added). To establish deliberate indifference, an inmate must demonstrate that a prison official knew the "inmate face[d] a substantial risk of serious harm and disregard[ed] that risk by failing to take reasonable measures to abate it." *Coleman*, 114 F.3d at 785 (citing *Farmer v. Brennan*, 511 U.S. 825, 847 (1994)).

### A. Denial of Treatment

As a preliminary matter, the defendants named are not responsible for the denial of health care. Because defendant Darin Young is the current warden and defendants Troy Ponto and Art Allcock are associate wardens, they are not medical providers and cannot be responsible for diagnostic decisions. Additionally, defendant Heather Bowers is not responsible for denial of health care because, as charge nurse, her job is to put in requests to physicians when inmates make complaints. There is no claim that she failed to put in the request to the physicians. Regardless, even if it is defendants' responsibility,

10

the undisputed facts show Strohfus had regular doctor appointments. Accordingly, Strohfus was not denied medical attention.

### B. Interference with Treatment

In the instant case, even if Strohfus's ear condition constituted a serious medical need, Strohfus has not satisfied the objective element, that interference of health care was sufficiently serious. While prison rules required that Strohfus could not blow dry his ear or wear a cap as recommended, Strohfus's care provider told Strohfus that he could use paper to fan his ear instead, and Strohfus was allowed to use a cap outdoors and was given dressing to cover his ear while at work. The ENT's recommended use of a cap was to keep Strohfus's ear dry and keep it from infection; however, indoors there is not the same concern that Strohfus's ear would get wet or that debris would enter his ear. Therefore, defendants are not liable for interfering with Strohfus's treatment by requiring that treatment align with prison policy.

Additionally, delay in setting appointments or giving Strohfus his eye drops does not satisfy the objectively serious interference threshold. "[T]he objective seriousness of the deprivation should be measured by reference to the effects of delay in treatment." *Crowley v. Hedgepeth*, 109 F.3d 500, 502 (8th Cir. 1997); *see also Laughlin v. Schriro*, 430 F.3d 927, 929 (8th Cir. 2005). Strohfus experienced pain and discomfort from the prison's delay in providing him eye drops for approximately a week and a half; however, Strohfus has, on

11

his own accord, gone longer without eye drops. Docket 31. Furthermore, discomfort does not arise to the level of "a detrimental effect." *Laughlin*, 430 F.3d at 929.

Strohfus has not alleged facts that show that defendants acted with a sufficiently culpable state of mind. "An inadvertent failure to provide adequate medical care is simply not a constitutional violation." *Bender v. Regier*, 385 F.3d 1133, 1138 (8th Cir. 2004) (internal citations omitted). To show a constitutional violation, a plaintiff must show deliberate indifference to medical needs. *Coleman*, 114 F.3d at 784. The undisputed facts establish that Strohfus was seen by an ENT on a monthly basis, Strohfus underwent multiple surgeries, and Strohfus was x-rayed multiple times. Even if defendants were aware that Strohfus's ear condition could lead to serious harm, by sending plaintiff to the ENT on a monthly basis and scheduling him for multiple surgeries and x-rays, defendants took reasonable steps to abate Strohfus's problems and did not *deliberately* interfere with Strohfus's treatment. Therefore, defendants are entitled to judgment as a matter of law.

## II.     **Defendants are Entitled to Summary Judgment on Count II**.

Strohfus alleges that defendants deliberately interfered with his right to proper health care by not providing him with special shoes. Even if his back condition amounts to a severe medical condition, Strohfus's disagreement with his course of treatment does not amount to a constitutional deprivation. *See*

*Long v. Nix*, 86 F.3d 761, 765 (8th Cir. 1996) (stating that medical staff are not required to provide the type of treatment that an inmate requests)*; see also Estate of Rosenberg by Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir. 1995) ("[M]ere disagreement with treatment decisions does not rise to the level of a constitutional violation."); *see also Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997) ("[I]nmates have no constitutional right to receive a particular or requested course of treatment . . . ."). Failure to provide shoes for Strohfus does not amount to detrimental interference. In the instant case, the medical providers and staff stated that shoes were not a conventional method for treating back pain. Docket 31. The court will not disturb the medical provider's professional judgment. Accordingly, defendants are entitled to judgment as a matter of law. It is therefore

ORDERED that defendants' motion for summary judgment (Docket 29) is granted.

Dated July 24, 2014.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE